**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**CARITAS MEDICAL CENTER, et al.,**      )
                                        )
                                        )
          **Plaintiffs,**                )
               **v.**                    )          **Case No. 07-1889 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**       )
**U.S. DEPARTMENT OF HEALTH AND**        )
   **HUMAN SERVICES,**                   )
                                        )
          **Defendant.**                 )
_____ )
                                        )
**BAPTIST MEMORIAL HOSPITAL –**          )
**MISSISSIPPI COUNTY, INC., et al.,**    )
                                        )
          **Plaintiffs,**                )
               **v.**                    )          **Case No. 07-2197 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**       )
**U.S. DEPARTMENT OF HEALTH AND**        )
   **HUMAN SERVICES,**                   )
                                        )
          **Defendant.**                 )
_____ )
                                        )
**CHIPPEWA VALLEY HOSPITAL &**           )
**OAKVIEW CARE CENTER, INC.,**           )
**et al.,**                              )
                                        )
                                        )
          **Plaintiffs,**                )
               **v.**                    )          **Case No. 07-2329 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**       )
**U.S. DEPARTMENT OF HEALTH AND**        )
   **HUMAN SERVICES,**                   )
                                        )
          **Defendant.**                 )
_____ )

## <u>PLAINTIFFS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs respectfully move for summary judgment in their favor on the grounds that there are no material facts in dispute and that Plaintiffs are entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to the accompanying Plaintiffs' Memorandum of Points and Authorities in Support of Their Consolidated Motion for Summary Judgment, and Plaintiffs' Statement of Material Facts Not in Genuine Dispute.  A proposed order setting forth the relief requested by this motion is also attached.

.

Respectfully Submitted,

_____*/s/*_____
Christopher L. Keough (lead)
   DC Bar No. 436567
Dennis M. Barry
   DC Bar No. 375152
Robert E. Waters
   DC Bar No. 976412
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 626-5451 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiffs in
Case No. 07-1889

_____/s/_____
Christopher L. Crosswhite
   D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W.
Suite 1000
Washington, D.C. 20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL 33131
(305) 960-2218

Co-Counsel for Plaintiffs in
Case No. 07-1889 and
Counsel for Plaintiffs in
Case Nos. 07-2197 and
07-2329

Dated: June 2, 2008

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**CARITAS MEDICAL CENTER, et al.,**     )
                                        )
                                        )
          **Plaintiffs,**               )
      **v.**                            )          **Case No. 07-1889 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**      )
**U.S. DEPARTMENT OF HEALTH AND**       )
   **HUMAN SERVICES,**                  )
                                        )
          **Defendant.**                )
_____ )
                                        )
**BAPTIST MEMORIAL HOSPITAL –**         )
**MISSISSIPPI COUNTY, INC., et al.,**   )
                                        )
          **Plaintiffs,**               )
      **v.**                            )          **Case No. 07-2197 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**      )
**U.S. DEPARTMENT OF HEALTH AND**       )
   **HUMAN SERVICES,**                  )
                                        )
          **Defendant.**                )
_____ )
                                        )
**CHIPPEWA VALLEY HOSPITAL &**          )
**OAKVIEW CARE CENTER, INC.,**          )
**et al.,**                             )
                                        )
                                        )
          **Plaintiffs,**               )
      **v.**                            )          **Case No. 07-2329 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary,**      )
**U.S. DEPARTMENT OF HEALTH AND**       )
   **HUMAN SERVICES,**                  )
                                        )
          **Defendant.**                )
_____ )

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THEIR CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

Christopher L. Keough (lead)
   DC Bar No. 436567
Dennis M. Barry
   DC Bar No. 375152
Robert E. Waters
   DC Bar No. 976412
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006-4706
(202) 626-5451 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiffs in
Case No. 07-1889

Christopher L. Crosswhite
   D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W.
Suite 1000
Washington, D.C. 20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL 33131
(305) 960-2218

Co-Counsel for Plaintiffs in
Case No. 07-1889 and
Counsel for Plaintiffs in
Case No. 07-2197 and 07-2329

June 2, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ................................................................................................ 1

II.     STATUTORY AND REGULATORY BACKGROUND ................................................. 3

      2.1.    Overview of the Medicare Program and Medicare Part B .................................... 3

      2.2.    Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services ....... 4

      2.3.    Express Statutory Limitations on Reasonable Cost Reimbursement ..................... 6

      2.4.    Congressional Enactments in Response to the Secretary's Delayed
            Implementation of the Outpatient Prospective Payment System ........................... 8

      2.5.    Medicare Cost Report and Appeals Procedure ..................................................... 9

III.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ........................... 10

IV.    STANDARD OF REVIEW .................................................................................... 12

V.     ARGUMENT ....................................................................................................... 14

      5.1.    The Secretary's Application of the Limits to Outpatient Services Furnished
            in 1999 and 2000 Is Contrary to the Plain Statutory Language and Clearly
            Expressed Congressional Intent. ....................................................................... 14

      5.2.    The Secretary Cannot Meet His Burden of Showing that Application of the
            Blended Payment Rate Limitations to Services Furnished After January 1,
            1999 Is the Minimum Statutory Alteration Necessary to Achieve
            Congressional Intent. ....................................................................................... 20

      5.3.    The Secretary's Action Is Arbitrary and Capricious Due to the Secretary's
            Failure to Provide a Reasoned Explanation for Treating Similar Situations
            Differently. ...................................................................................................... 26

      5.4.    The Secretary May Not Retroactively Apply the Blended Payment Rate
            Limitation to the 1999 and 2000 Cost Reporting Periods. ................................. 28

VI.    CONCLUSION ................................................................................................... 31

## **TABLE OF AUTHORITIES**

### **Cases**

*Adm'rs of the Tulane Educ. Fund v. Shalala*,
  987 F.2d 790 (D.C. Cir. 1993) ........................................................ 16
*Airmark Corp. v. FAA*,
  758 F.2d 685 (D.C. Cir. 1985) ........................................................ 26
*Appalachian Power Co. v. Environmental Protection Agency*,
  249 F.3d 1032 (D.C. Cir. 2001) ............................................. 13, 20, 22
*AT&T Corp. v. FCC*,
  369 F.3d 554 (D.C. Cir. 2004) ........................................................ 18
*Barnhart v. Peabody Coal Co.*,
  537 U.S. 149 (2003) .................................................................... 17
*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) .................................................................... 25
*Bell Atlantic Telephone Companies v. FCC*,
  131 F.3d 1044 (D.C. Cir. 1997) ...................................................... 16
*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ............................................................... passim
*Burlington Northern & Santa Fe Ry. Co. v. Surface Trans. Bd.*,
  403 F.3d 771 (D.C. Cir. 2005) ........................................................ 26
*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) .................................................................... 12
*Engine Mfrs. Ass'n. v. U.S. Environmental Protection Agency*,
  88 F.3d 1075 (D.C. Cir. 1996) .............................................. 12, 22, 25
*Fund for Animals, Inc. v. Kempthorne*,
  472 F.3d 872 (D.C. Cir. 2006) ........................................................ 25
*Greyhound Corp. v. ICC*,
  551 F.2d 414 (D.C. Cir. 1977) ........................................................ 13
*Halverson v. Slater*,
  129 F.3d 180 (D.C. Cir. 1997) ........................................................ 24
*Holy Trinity Church v. United States*,
  143 U.S. 457 (1892) .................................................................... 12
*In re Medicare Reimbursement Litigation (Baystate)*,
  309 F. Supp. 2d 89 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005),
  *cert. denied*, 547 U.S. 1054 (2006) ................................................... 9
*King v. St. Vincent's Hosp.*,
  502 U.S. 215 (1991) .................................................................... 15
*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004) .................................................................... 26
*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994) ................................................................ 28, 29
*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
  507 U.S. 163 (1993) .................................................................... 17
*Mobil Oil Corp. v. U.S. Environmental Protection Agency*,
  35 F.3d 579 (D.C. Cir. 1994) ......................................................... 18

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)........................................................................................................ 13
*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C. Cir. 1998)................................................................................ passim
*Natural Resources Defense Council v. EPA ("NRDC I")*,
    489 F.3d 1364 (D.C. Cir. 2007)....................................................................................... 16
*Natural Resources Defense Council v. Thomas ("NRDC II")*,
    805 F.2d 410 (D.C. Cir. 1986) ........................................................................................ 22
*St. Mary of Nazareth Hosp. Ctr. v. Heckler*,
    760 F.2d 1311 (D.C. Cir. 1985)................................................................................... 6, 19
*Transactive Corp. v. United States*,
    91 F.3d 232 (D.C. Cir. 1996) ................................................................................ 3, 13, 26
*United Dominion Indus. v. United States*,
    532 U.S. 822 (2001)........................................................................................................ 17
*United States ex rel. Totten v. Bombardier Corp.*,
    380 F.3d 488 (D.C. Cir. 2004) ........................................................................................ 26
*United States v. Diapulse Corp.*,
    748 F.2d 56 (2nd Cir. 1984) ........................................................................................... 26
*Watt v. Alaska*,
    451 U.S. 259 (1981)........................................................................................................ 24
*WLOS TV, Inc. v. FCC*,
    932 F.2d 993 (D.C. Cir. 1991) ........................................................................................ 13

## <u>Statutes</u>

5 U.S.C. § 706 ....................................................................................................... 10, 11
42 U.S.C. §§ 1395c – 1395i-4 .......................................................................................... 3
42 U.S.C. §§ 1395j – 1395w-4 ......................................................................................... 3
42 U.S.C. § 1395h ........................................................................................................... 9
42 U.S.C. § 1395k ........................................................................................................... 4
42 U.S.C. § 1395*l* ........................................................................................................... 4
42 U.S.C. § 1395*l*(t)(1)(A) ............................................................................................... 7
42 U.S.C. § 1395oo(a) ..................................................................................................... 9
42 U.S.C. § 1395oo(f) .................................................................................................... 11
42 U.S.C. § 1395oo(f)(1) ............................................................................................... 10
42 U.S.C. § 1395oo(f)(2) ................................................................................................. 3
42 U.S.C. § 1395oo(h) ................................................................................................... 10
*42 U.S.C. § 1395x(v)(1)(A) .................................................................................4, 5, 19, 23
*42 U.S.C. § 1395x(v)(1)(S)(ii) ................................................................................... 7, 18
*Balanced Budget Act of 1997 ("BBA '97"),
    Pub. L. No. 105-33 § 4522 ..................................................................................... 7, 8, 17
Balanced Budget Act of 1997 ("BBA '97"),
    Pub. L. No. 105-33 § 4523(a) ........................................................................... 7, 8, 17, 20
*Balanced Budget Act of 1997 ("BBA '97"),
    Pub. L. No. 105-33 § 4523(d) .................................................................................. passim
*Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 ("BBRA '99"),
    Pub. L. No. 106-113 § 201(k) ................................................................................. 2, 8, 17

Omnibus Budget Reconciliation Act of 1986 ("OBRA '86"),
    Pub. L. No. 99-509 § 9343(a)........................................................................ 6, 14
Omnibus Budget Reconciliation Act of 1987 ("OBRA '87"),
    Pub. L. No. 100-203 § 4066........................................................................ 6, 15
Social Security Amendments of 1965,
    Pub. L. No. 89-97 § 102(a) .......................................................................... 3, 4
Social Security Amendments of 1972,
    Pub. L. No. 92-603 §233(b), *reprinted in* 1972 U.S.C.C.A.N. 1548 ......................................... 6

## Regulations

42 C.F.R. § 405.1801................................................................................................9
42 C.F.R. § 405.1803................................................................................................9
42 C.F.R. § 405.1835................................................................................................9
42 C.F.R. § 405.1867..............................................................................................10
42 C.F.R. § 405.1877..............................................................................................10
42 C.F.R. § 413.1(b)............................................................................................4, 18
42 C.F.R. § 413.5(a) .....................................................................................5, 19, 23
42 C.F.R. § 413.9(b)..................................................................................................5
42 C.F.R. § 413.9(b)(1).......................................................................................5, 23
42 C.F.R. § 413.9(c)(2)..............................................................................................6
42 C.F.R. § 415.160................................................................................................27
42 C.F.R. § 415.202................................................................................................27
42 C.F.R. § 419.2(c)(4)...........................................................................................27
63 Fed. Reg. 47552 (Sept. 8, 1998)...................................................................7, 8, 17
65 Fed. Reg. 18434 (Apr. 7, 2000).................................................................9, 20, 21
65 Fed. Reg. 40535 (June 30, 2000)..........................................................................9

## Other Authorities

H.R. Rep. No. 92-231 (1971),
    *reprinted in* 1972 U.S.C.C.A.N. 4989 ....................................................... 29
HCFA Ruling 87-3,
    *reprinted in* 52 Fed. Reg. 13873 (Apr. 27, 1987).................................... 19
*Senate Report 404,
    *reprinted in* 1965 U.S.C.C.A.N. 1943 ................................................... *passim*

I.      INTRODUCTION

This action is brought by a group of mostly non-profit, Medicare-participating hospitals seeking reimbursement for the reasonable costs of services furnished to Medicare beneficiaries who were hospital outpatients in 1999 and most of 2000.  Without statutory authorization and in contradiction of Congress' manifest intent and express statutory directive, Defendant, the Secretary of the United States Department of Health and Human Services ("Secretary"), retroactively imposed limitations on Medicare payments to the Plaintiff Hospitals for costs of outpatient services they provided in 1999 and 2000.  Rather than reimbursing the Plaintiff Hospitals for the reasonable costs of the services they provided to Medicare beneficiaries, as determined through application of the Secretary's long-standing reasonable cost reimbursement principles, the Secretary instead determined after the period at issue to pay the hospitals less than their reasonable costs through his application of certain "blended payment rate limits" ("Limits") on payment for costs of three particular types of services.

The Secretary determined to apply the Limits despite the fact that Congress previously amended the Medicare statute to make those Limits inapplicable to services provided during the period at issue.  *See* Balanced Budget Act of 1997 ("BBA '97"), Pub. L. No. 105-33 § 4523(d).  Moreover, the Secretary did not announce his determination to apply the Limits to the 1999-2000 period at issue until April 2000, when most of the services had already been provided.  At that point, in the absence of statutory directives to the contrary, the hospitals reasonably would have expected to be reimbursed for the reasonable costs of the covered services provided.

As Plaintiffs show below, the Secretary's retroactive application of the Limits is invalid and must be reversed for four independent reasons:

1)    The Secretary's determination is *ultra vires*, and violates the plain language of the Medicare statute, because it applies the Limits to a period that, by statute, is not subject to them. *See* BBA '97 § 4523(d) (terminating the Limits effective January 1, 1999).

2)    Even accepting the Secretary's view that a literal construction of the statute would produce an absurd result, the Secretary cannot meet his burden to show that he has modified the statute no more than the minimum extent necessary to meet Congress' clear intent. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998). It is clear that Congress intended to cover the outpatient hospital services at issue, but when Congress became aware that the Secretary would not meet the original January 1, 1999 deadline to establish a new prospective payment system for hospital outpatient services, Congress chose not to extend the Limits beyond January 1, 1999. But Congress did amend the statute to extend two other provisions that are part and parcel of the statutory definition of "reasonable cost" until such time as the Secretary implemented the new prospective payment system for hospital outpatient services. *See* Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 ("BBRA '99"), Pub. L. No. 106-113 § 201(k). And, since the inception of the Medicare program in 1965, Congress has intended to provide for reimbursement of hospitals' reasonable costs of services furnished to Medicare patients, absent an express statutory limitation on payment of some amount that is less than reasonable cost. *See* Senate Report 404, *reprinted in* 1965 U.S.C.C.A.N. 1943, 1947, 1949.

3)    The Secretary's determination to pay less than the reasonable costs of the services at issue here is inconsistent with the Secretary's treatment of other types of hospital outpatient services that were furnished on or after January 1, 1999, were never designated for payment under the outpatient prospective payment system, and have continued to be reimbursed on a

reasonable costs basis even in the absence of an explicit statutory provision for payment of reasonable costs incurred in furnishing such services after January 1, 1999. This inconsistent treatment, without any explanation by the Secretary, is the very hallmark of arbitrary and capricious agency action. *See Transactive Corp. v. United States*, 91 F.3d 232, 237-38 (D.C. Cir. 1996).

4)    The Secretary's determination in an April 2000 rule to apply the Limits to determine payments for services furnished prior to the promulgation of that rule is an impermissibly retroactive rule. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Retroactivity is disfavored in the law, *see id.,* and the Secretary, therefore, may not promulgate a rule with retroactive effect absent an express grant of statutory authority that is lacking here.

For all of these reasons, the hospitals request that the Court order the Secretary to reimburse them the difference between the reasonable costs of the covered outpatient services they provided to Medicare beneficiaries and the lower blended payment rates actually paid to the hospitals for the services in question. The hospitals also seek interest on that sum as calculated in accordance with 42 U.S.C. § 1395oo(f)(2).

## II.    STATUTORY AND REGULATORY BACKGROUND

### 2.1.    Overview of the Medicare Program and Medicare Part B

Congress enacted the Medicare program in 1965 to establish health insurance for the aged and disabled. *See* Social Security Amendments of 1965, Pub. L. No. 89-97 § 102(a). Part A of the Medicare program covers services furnished to hospital inpatients, and Part B of the program covers hospital services furnished to outpatients. *See* 42 U.S.C. §§ 1395c – 1395i-4 (Medicare Part A); 42 U.S.C. §§ 1395j-1395w-4 (Medicare Part B). The issue in this case concerns reimbursement owed to the Plaintiff Hospitals for outpatient services covered under

Medicare Part B and provided by the hospitals during the period from January 1, 1999 to August 1, 2000.

Section 1832 of the Social Security Act (the "Act"), 42 U.S.C. § 1395k, specifies the items and services which are covered under Medicare Part B, including hospital outpatient services. Section 1833 of the Act, 42 U.S.C. § 1395*l*, sets forth the amount of payment owed for each covered item or service.

There is no dispute that the hospital outpatient services at issue were covered under Medicare Part B.  The only dispute is the Secretary's determination to pay the hospitals less than their reasonable costs – as determined by the Secretary – for the covered services they furnished to Medicare outpatients.

### 2.2. Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services

At the inception of the Medicare program in 1965, the Medicare Act provided for payment of the reasonable costs of services to Medicare inpatients and outpatients.  *See* Social Security Amendments of 1965, Pub. L. No. 89-97 (enacting sections 1814(b) and 1833(b)(2)(A) of the Act); *see also* Senate Report 404, *reprinted in* 1965 U.S.C.C.A.N. 1943, 1947, 1949 (discussing Congress' intent to reimburse hospitals for the reasonable cost of services furnished to Medicare inpatients and outpatients).

Since the inception of the Medicare program in 1965, and through numerous amendments to the statute, reasonable cost reimbursement has remained the general rule governing Medicare payment for services furnished by hospitals, except where Congress has expressly authorized payment on some other basis.  The Secretary's own regulations plainly recognize this principle:

> Medicare is generally required, under section 1814(b) of the Act (for services covered under Part A) and under section 1833(a)(2) of the Act (for services covered under Part B) to pay for services furnished by providers on the basis of reasonable costs as defined in section 1861(v) of the Act, or the provider's customary charges for those services, if lower.

42 C.F.R. § 413.1(b).   The statutory definition of reasonable costs, as set forth in section 1861(v)(1)(A) of the Act, 42 U.S.C. § 1395x(v)(1)(A), provides that reimbursement for reasonable costs is intended generally to meet the actual costs incurred in furnishing covered services:

> The reasonable cost of any services shall be the cost *actually incurred*, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services.

(Emphasis added).   The statute further provides that in establishing regulations for the determination of reasonable costs, the Secretary must ensure that the costs of services furnished to Medicare beneficiaries are not shifted to non-Medicare patients, and *vice-versa*.   *See* § 1861(v)(1)(A) of the Act, 42 U.S.C. § 1395x(v)(1)(A); *see also* Senate Report 404, *reprinted in* 1965 U.S.C.C.A.N. 1943, 1976 ("[U]nder any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program.").   This statutory mandate is known as the "prohibition against cross-subsidization" and is also established in the Secretary's cost reimbursement regulations at 42 C.F.R. § 413.9(b)(1).

The statutory prohibition against cross-subsidization is designed to ensure that the Medicare program pays its fair share of the costs associated with providing inpatient and outpatient services to Medicare beneficiaries.   This principle is recognized in the Secretary's long-standing regulations, stating the intent of the program to provide "fair and equitable reimbursement for services rendered [to] beneficiaries of the program."  42 C.F.R. § 413.5(a).

Consistent with the manifest intent of the Act, Medicare reasonable cost reimbursement principles are intended to ensure that all necessary and proper costs of furnishing covered

services are included in the determination of a hospital's reasonable cost of services furnished to

Medicare patients. *See* 42 C.F.R. §§ 413.5(a), 413.9(b). This is subject only to a limitation on

costs shown to be substantially out of line with costs incurred by similar institutions in the same

area to provide comparable services. 42 C.F.R. § 413.9(c)(2); Senate Report 404, *reprinted in*

1965 U.S.C.C.A.N. 1943, 1976. Thus, in the absence of an express statutory provision for

payment of some amount less than the reasonable cost, courts have consistently enforced the

prohibition against cross-subsidization to invalidate Medicare payment policies that

impermissibly deny payment to providers for the reasonable costs of services furnished to

Medicare beneficiaries. *See, e.g.*, *St. Mary of Nazareth Hosp. Ctr. v. Heckler*, 760 F.2d 1311,

1315-17 (D.C. Cir. 1985).

### 2.3. Express Statutory Limitations on Reasonable Cost Reimbursement

Over the years, Congress has enacted various express statutory limitations on

reimbursement for reasonable costs. In 1972, for example, Congress amended the statute to

provide for payment of the lower of the reasonable costs of hospital outpatient services or a

hospital's customary charges for such services. *See* Social Security Amendments of 1972, Pub.

L. No. 92-603 §233(b), *reprinted in* 1972 U.S.C.C.A.N. 1548, 1649-50.

Beginning in 1986, Congress enacted a series of statutory limitations on reasonable cost

reimbursement for the three types of hospital outpatient services at issue here: ambulatory

surgical services, radiology, and diagnostic services. Those Limits provided for payment of the

lesser of a hospital's reasonable costs, customary charges, or a blended payment rate. *See*

Omnibus Budget Reconciliation Act of 1986 ("OBRA '86"), Pub. L. No. 99-509 § 9343(a),

(amending § 1833 of the Act to provide for a blended payment rate limitation for ambulatory

surgery services); Omnibus Budget Reconciliation Act of 1987 ("OBRA '87"), Pub. L. No.

– 6 –

100-203 § 4066 (amending § 1833 of the Act to establish a blended payment rate limitation for radiology and certain diagnostic services).

In 1990, Congress amended the statutory definition of "reasonable cost", in section 1861(v)(1)(S)(ii) of the Act, 42 U.S.C. § 1395x(v)(1)(S)(ii), to limit the reasonable costs of hospital outpatient services by a 5.8 percent cost reduction factor for operating costs and a 10 percent cost reduction factor for capital-related costs of hospital outpatient services.   As discussed below, Congress subsequently amended the statute twice more – in 1997 and in 1999 – to extend these reasonable cost reduction factors throughout the 1999-2000 period at issue.

In 1997, Congress enacted three closely related amendments to the Medicare statute in connection with establishment of a new "prospective payment system" for hospital outpatient services.  These amendments were enacted in the following three provisions of the Balanced Budget Act of 1997 (BBA '97):

1)      In section 4522, Congress extended through 1999 the 5.8 and 10 percent reduction factors applicable to the costs of hospital outpatient services, which had been set to expire on September 30, 1998.

2)      In the next section of the BBA, section 4523(a), Congress directed the Secretary to establish a new prospective payment system for outpatient services designated by the Secretary beginning in 1999.   *See* § 1833(t)(1)(A) of the Act, codified at 42 U.S.C. § 1395*l*(t)(1)(A); *see also* 63 Fed. Reg. 47552, 47552 (Sept. 8, 1998) ("The Balanced Budget Act provides for implementation of the prospective payment system effective January 1, 1999 . . . .")

3)      Finally, subsection (d) of the same section of the BBA, section 4523(d), terminated the Limits at issue effective January 1, 1999.

The dispute in this case arises from the Secretary's application of the Limits to outpatient services provided during the period from January 1, 1999 through August 1, 2000, when the Secretary belatedly implemented the prospective payment system for hospital outpatient services ("Outpatient PPS").

### 2.4.    Congressional Enactments in Response to the Secretary's Delayed Implementation of the Outpatient Prospective Payment System

In September 1998, the Secretary published a proposed rule in the Federal Register announcing that the Secretary would not implement the Outpatient PPS by Congress' January 1, 1999 deadline. *See* 63 Fed. Reg. at 47554. The Secretary said that the new payment system would not be implemented until after January 1, 2000. *Id.*

In addition to giving notice that the Outpatient PPS would be delayed beyond the statutory deadline, the Secretary's proposed rule also announced that the 5.8 and 10 percent reduction factors for hospital outpatient operating and capital costs would be extended as provided in BBA '97 to January 1, 1999. 63 Fed. Reg. at 47555. The proposed rule did not announce any intention to apply the Limits at issue here beyond January 1, 1999.

In 1999, Congress enacted legislation responding to the Secretary's notice that he would not implement the new prospective payment system by the statutory deadline established in the 1997 legislation. In section 201(k) of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 (BBRA '99), and with knowledge of the Secretary's delay in implementing the Outpatient PPS as directed in section 4523(a) of BBA '97, Congress chose to "[extend the] payment provisions of section 4522 of BBA [i.e., the 5.8 and 10 percent cost reasonable cost reduction factors] until implementation of PPS." Congress did not, however, extend the Limits that had been terminated, effective January 1, 1999, in the very next section of the BBA – section 4523(d). With awareness of the fact that the Secretary would not implement

the Outpatient PPS in 1999 as required by subsection (a) of section 4523 of the BBA, Congress chose to retain the language in subsection (d) of the same section 4523 of the BBA that had terminated the Limits at issue here effective January 1, 1999.

On April 7, 2000, the Secretary published a final rule regarding the Outpatient PPS. 65 Fed. Reg. 18434, 18434 (Apr. 7, 2000). In the 2000 rule, for the first time, the Secretary indicated his intention to apply the Limits to services furnished after January 1, 1999, despite the express statutory directive terminating the Limits effective January 1, 1999. *See id.* at 18489-90. The Secretary subsequently implemented the Outpatient PPS effective August 1, 2000, *see* 65 Fed. Reg. 40535, 40535 (June 30, 2000), and thereafter applied the Limits to determine payments for hospital outpatient services furnished from January 1, 1999 through July 31, 2000.

### 2.5.    Medicare Cost Report and Appeals Procedure

Medicare reimbursements to hospitals are determined by fiscal intermediaries, private firms that act as contracted agents of the Secretary. *See* 42 U.S.C. § 1395h. At the end of each fiscal year, a hospital submits a cost report to its fiscal intermediary, outlining the hospital's costs and the portion of those costs attributable to items and services provided to Medicare beneficiaries during that fiscal year. *See In re Medicare Reimbursement Litigation (Baystate)*, 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1054 (2006); *see also* 42 C.F.R. § 405.1803. The fiscal intermediary reviews the hospital's cost report, applying the Secretary's rules, regulations and reasonable cost reimbursement principles. *See* 42 C.F.R. §§ 405.1801, 405.1803. The fiscal intermediary then issues a Notice of Program Reimbursement, or NPR, notifying the hospital of the intermediary's final determination of the hospital's Medicare reimbursement amount for the cost reporting period. *See* 42 C.F.R. § 405.1803.

A hospital that is dissatisfied with the fiscal intermediary's determination of the amount of Medicare reimbursement may appeal to the Provider Reimbursement Review Board ("PRRB" or "the Board").  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  The Board is a five-member administrative tribunal appointed by the Secretary.  42 U.S.C. § 1395oo(h).  In reviewing a hospital's Medicare reimbursement determination, the PRRB is bound by all statutory provisions of Title XVIII of the Social Security Act as well as the Secretary's regulations issued thereunder.  42 C.F.R. § 405.1867.

Because the Board is bound by the Secretary's rules, the statutory provision governing hospital appeals to the PRRB also provides for expedited judicial review by this Court of any determination of the fiscal intermediary that "involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question."  42 U.S.C. § 1395oo(f)(1); *see also* 42 C.F.R. § 405.1877.  The statute further provides that judicial review shall be "pursuant to the applicable provisions" of the Administrative Procedure Act ("APA").  42 U.S.C. § 1395oo(f)(1).  The applicable provisions of the APA provide that the reviewing court may set aside agency action that exceeds statutory authority, is contrary to law, arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.  5 U.S.C. § 706.

## III.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Each of the Plaintiff Hospitals participated in the Medicare program as a provider of hospital services during the period from January 1, 1999, when the Limits were made inapplicable by statute, through August 1, 2000, when the Secretary implemented the Outpatient PPS.  *See* Plaintiffs' Statement of Material Facts Not in Genuine Dispute ("Pl. Stmt.") ¶ 3.  The hospitals submitted cost reports on forms prescribed by the Secretary for each cost reporting period that ended during the January 1, 1999 to August 1, 2000 period at issue.  Pl. Stmt. ¶ 5.  In

accordance with the Secretary's longstanding reasonable cost reimbursement principles, the fiscal intermediaries were required to review the submitted cost reports and render determinations of the reasonable costs incurred by the hospitals for the services furnished to Medicare patients during the periods covered by those cost reports. *Id.* The fiscal intermediaries also were required to apply the Limits to determine Medicare payments for ambulatory surgical, radiology, and diagnostic services furnished hospital outpatients. Pl. Stmt. ¶ 6. This resulted in a determination of Medicare reimbursement which was less than the hospitals' reasonable costs, as determined by the Secretary, incurred in providing the services at issue. Pl. Stmt. ¶ 7.

After the fiscal intermediaries issued NPRs for the cost reporting periods at issue, the hospitals timely appealed each of the NPRs to the PRRB. Pl. Stmt. ¶ 8. The hospitals challenged the application of the Limits to determine the hospitals' reimbursement for ambulatory surgical, radiology, and diagnostic services furnished to hospital outpatients on or after January 1, 1999. For each of the administrative appeals, the PRRB granted the hospitals' request for expedited judicial review of the Secretary's application of the Limits to determine reimbursement for the periods at issue. Pl. Stmt. ¶ 9.

The Plaintiff Hospitals subsequently filed three separate actions for judicial review by this Court.[1] On January 31, 2008, the parties jointly moved to consolidate all three cases for purposes of joint briefing on motions for summary judgment. On February 11, 2008, the Court granted that joint motion.[2] On April 23, 2008, the Court granted the parties' joint motion to set a schedule for briefing on summary judgment.

---

[1]    The separate actions were necessitated by the differing dates of the various PRRB decisions granting expedited judicial review in the hospitals' administrative appeals, which affected the timeframe for seeking judicial review under the statute. See 42 U.S.C. § 1395oo(f)(1).

[2]    The Court's order granting the joint motion was entered in *Caritas Medical Center, et al. v. Leavitt*, No. 07-1889 ("*Caritas*"), the earliest-numbered of the three actions. The other two actions were subsequently reassigned to the judge in *Caritas* for consolidated briefing and hearing on motions for summary judgment. *See* Pl. St. ¶ 11.

## IV.    STANDARD OF REVIEW

Jurisdiction over this action lies under 42 U.S.C. § 1395oo(f), which provides that the case "shall be tried pursuant to the applicable provisions under" the Administrative Procedure Act ("APA").  The applicable provisions of the APA require a reviewing court to set aside the Secretary's decision if it is contrary to the statute, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.  5 U.S.C. § 706.

Judicial review of an agency's interpretation of a statute begins with the plain language of the statute itself.  If agency action conflicts with the plain language of the statute, the reviewing court's inquiry is ordinarily at an end, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).

When the literal language of a statute leads to an absurd result, however, "the act must be so construed to avoid the absurdity."  *Holy Trinity Church v. United States*, 143 U.S. 457, 459-60 (1892).  In order to determine whether the literal construction of a statute leads to an "absurd" result, the court must "consider not only whether that result is contrary to common sense, but also whether it is inconsistent with the clear intentions of the statute's drafters – that is, whether the result is absurd when considered in the particular statutory context."  *Mova*, 140 F.3d at 1068; *see also Engine Mfrs. Ass'n. v. U.S. Environmental Protection Agency*, 88 F.3d 1075, 1089 (D.C. Cir. 1996) (it is proper for a court to conclude that the literal language of a statute would lead to an absurd result that should not be followed when either "as a matter of historical fact, Congress did not mean what it appears to have said, or . . . as a matter of logic and statutory structure, it almost surely could not have meant it.").  In those circumstances, the agency charged with administering the statute bears the burden to show that the agency has departed from the statute's actual language to the minimum extent necessary to give effect to the clear intent of

Congress. *Mova*, 140 F.3d at 1068. The agency's interpretation in such circumstances is not entitled to any particular deference by the reviewing court. *See Appalachian Power Co. v. Environmental Protection Agency*, 249 F.3d 1032, 1043-44 (D.C. Cir. 2001); *see also Mova*, 140 F.3d at 1068. ("[O]ur review of the agency's deviation from the statutory text will occur under the first step of the *Chevron* analysis, in which we do not defer to the agency's interpretation of the statute.").

The scope of review under the arbitrary and capricious standard of the APA entails a careful, searching inquiry as to whether:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Further, an agency decision that constitutes an unexplained departure from agency precedent must be overturned as arbitrary and capricious. *Transactive Corp.*, 91 F.3d at 237-38; *WLOS TV, Inc. v. FCC*, 932 F.2d 993, 996-98 (D.C. Cir. 1991); *Greyhound Corp. v. ICC*, 551 F.2d 414, 416-18 (D.C. Cir. 1977). In addition, an agency decision is arbitrary and capricious if the agency offers insufficient reasons for treating similar situations differently. *Transactive Corp.*, 91 F.3d at 237.

In the absence of express statutory authority, retroactive agency rulemaking is contrary to law. *See Bowen*, 488 U.S. at 208. Retroactivity is disfavored in the law, *see id.,* and the Secretary, therefore, may not promulgate a rule with retroactive effect absent an express grant of statutory authority.

## V.    ARGUMENT

The Secretary's application of the Limits to determine payment for services furnished during the 1999-2000 period at issue is invalid for the following reasons, each of which is sufficient, without more, to set aside the Secretary's action:

(1)    The Secretary acted in contradiction of the plain statutory language and clear intent of Congress in applying the Limits after Congress had expressly terminated them effective January 1, 1999. *See* BBA '97 § 4523(d).

(2)    The Secretary cannot meet his burden to show that his decision to apply the Limits beyond January 1, 1999 altered the statutory language no further than minimum extent necessary to give effect to Congress' clear intent. *See Mova*, 140 F.3d at 1068.

(3)    The Secretary's decision is arbitrary and capricious because it inconsistently and without rational explanation applies the Limits to the outpatient services at issue here, while reimbursing hospitals for other similar outpatient services on a reasonable cost basis.

(4)    The Secretary's decision in April 2000 to apply the Limits to services previously furnished is an impermissibly retroactive rule. *See Bowen*, 488 U.S. at 208.

### 5.1.    The Secretary's Application of the Limits to Outpatient Services Furnished in 1999 and 2000 Is Contrary to the Plain Statutory Language and Clearly Expressed Congressional Intent.

In applying the Limits to outpatient services furnished on or after January 1, 1999, the Secretary violated the plain language section 4523(d) of the BBA and the manifest intent of the Medicare Act and its amendments, construed as a whole and in context. As discussed above, section 4523(d) of the BBA expressly terminated the Limits effective January 1, 1999. Moreover, the Secretary cannot empower himself to apply the Limits beyond January 1, 1999, in

– 14 –

contravention of Congress' clearly expressed will, simply by virtue of his own failure to timely implement the Outpatient PPS. In the absence of statutory authorization to extend the Limits beyond January 1, 1999, the Secretary must give effect to Congress' manifest intent to provide for reimbursement of the reasonable costs incurred by the hospitals, after application of the 5.8 and 10 percent reasonable cost reduction factors that Congress extended until the Outpatient PPS was finally implemented by the Secretary, in furnishing the services at issue.

Until 1997, the Medicare Act plainly authorized the Secretary to apply the Limits to ambulatory surgical, radiology and diagnostic services furnished to hospital outpatients. *See* OBRA '86, Pub. L. No. 99-509 § 9343(a) (amending §1833 of the Act to provide for a blended payment rate limitation for ambulatory surgical services); OBRA '87, Pub. L. No. 100-203 § 4066 (amending § 1833 of the Act to establish a blended payment rate limitation for radiology and certain diagnostic services). But, section 4523(d) of BBA '97 amended the Act to terminate the Limits effective January 1, 1999. That statutory language is not conditional, not ambiguous and not discretionary. Congress flatly stated in section 4523(d) that the Limits would not apply to outpatient services furnished on or after January 1, 1999. In later deciding to apply the Limits to outpatient services furnished by the Plaintiff Hospitals between January 1, 1999 and August 1, 2000, the Secretary has simply violated Congress' express statutory command. It is that simple.

In addition to violating the plain language of the statute, the Secretary's action is inconsistent with the manifest intent of Congress. In determining Congress' intent, the reviewing court ordinarily looks to the structure and context of the statutory language as a whole, applying traditional canons of statutory construction. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("In so concluding we do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not,

depends on context.") (internal citations omitted).  Viewing the statute in context of the 1997 and 1999 amendments effected in the BBA and BBRA, it is clear that Congress could have chosen, but did not choose, to extend the Limits indefinitely until such time as the Secretary should implement the Outpatient PPS.  And, considering the 1999 amendments that did extend the 5.8 and 10 percent reasonable cost reduction factors, together with the omission of similar amendments authorizing the Secretary to extend the Limits beyond January 1, 1999, and Congress' long-standing, fundamental intent to reimburse providers for Medicare's fair share of the reasonable cost of services furnished to Medicare patients, it is evident that Congress intended to reimburse hospitals for the reasonable costs of outpatient hospitals services furnished to Medicare patients (net of the 5.8 percent and 10 percent reasonable cost reduction factors) during the period at issue.

In determining Congress' intent, the reviewing court "must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue." *Bell Atlantic Telephone Companies v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997). The first such tool is review of the statutory language itself.  *See id.*  And, in reviewing the statutory language, "[c]ontext is all." *Adm'rs of the Tulane Educ. Fund v. Shalala*, 987 F.2d 790, 796 (D.C. Cir. 1993).  "The words of the statute should be read in context, the statute's place in the overall statutory scheme should be considered, and the problem Congress sought to solve should be taken into account. . . ." *Natural Resources Defense Council v. EPA* ("*NRDC I*"), 489 F.3d 1364, 1373 (D.C. Cir. 2007).

Traditional canons of statutory construction also come into play in analyzing the meaning of the statute and Congressional intent.  One such canon is the oft-repeated maxim *expressio unius est exclusio alterius*, that is, the mention of one thing is the exclusion of others.  *See*

– 16 –

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). As the Supreme Court has explained, the relevance of this particular canon of statutory construction comes from the statutory context. *See United Dominion Indus. v. United States*, 532 U.S. 822, 836 (2001). Where, as here, Congress had a reason to consider the items omitted from its statutory language, then the omission may be inferred to have meaning. *See id.; see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 169 (2003) (holding that the *expressio unius* canon applies only when the items are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice).

In adjacent provisions of BBA '97, Congress enacted a series of three closely related amendments to the Act concerning Medicare reimbursement for hospital outpatient services. As discussed in section 2.3 above, section 4523(a) established a new prospective payment system for outpatient services beginning in 1999, subsection (d) of that same section of the BBA terminated the Limits effective January 1, 1999, and the preceding section 4522 extended the 5.8 and 10 percent reasonable cost reduction factors through 1999. After the Secretary announced in 1998 that his agency would not implement the Outpatient PPS by January 1, 1999 as Congress had directed in section 4523(a) of the BBA, *see* 63 Fed. Reg. at 47554, Congress revisited the BBA in 1999 and enacted further legislation extending the 5.8 and 10 percent reasonable cost reduction factors beyond the 1999 termination date that had been prescribed in section 4522 of the BBA and until implementation of the Outpatient PPS. *See* BBRA '99 § 201(k). In so doing, Congress indicated that it knew the Outpatient PPS would be delayed, and that it intended that this one statutory limitation on reimbursement for the reasonable costs of hospital outpatient services would be extended until full implementation of the Outpatient PPS. In short, it is clear

Congress was aware that the Outpatient PPS would be delayed, Congress knew that the Limits would expire in the interim, and Congress chose not extend the Limits beyond January 1, 1999.[3]

In summary, then, Congress terminated the Limits effective January 1, 1999.  Congress was not ambiguous in doing so, nor did it make the termination discretionary or contingent upon implementation of the Outpatient PPS.  With notice that the Secretary's implementation of the Outpatient PPS would be delayed, Congress did expressly extend the 5.8 and 10 percent reasonable cost reduction factors for hospital outpatient services, which otherwise would have expired prior to the effective date of the Outpatient PPS.  In short, Congress' amendments to the Act evidence no intent whatsoever to apply the Limits to services furnished on or after January 1, 1999.

In contrast, reimbursement for the reasonable cost of outpatient services furnished after January 1, 1999 and until implementation of the Outpatient PPS is fully consistent with Congressional intent as expressed in the Act when viewed as a whole.  The reasonable cost reduction factors that Congress expressly extended in 1999 are part and parcel of the Medicare statute's definition of the term "reasonable cost."  42 U.S.C. § 1395x(v)(1)(S)(ii).  Moreover,

---

[3]    The manner in which Congress terminated the application of the Limits also shows that Congress did not intend that the termination be conditioned upon the implementation of the Outpatient PPS.  As set forth above, in BBA '97 § 4523(d), Congress amended the statutory authorization for the Limits to include a sunset provision, directing that the authorizations no longer apply after January 1, 1999.  Such sunset provisions are common in administrative law, and are often conditioned on further agency action.  Congress has, for example, enacted statutory sunset provisions for regulatory provisions, while expressly granting the regulatory agency the discretion to extend application of the provisions.  *See, e.g., AT&T Corp. v. FCC*, 369 F.3d 554, 558-60 (D.C. Cir. 2004) (holding that the sunset provisions of § 272 of the Telecommunications Act of 1996 automatically terminated regulatory safeguards by operation of law unless the FCC, as expressly authorized by the same statutory section, extended the application of the safeguards).  Congress has also, on occasion, made sunset provisions for regulatory programs expressly contingent on an agency enacting a replacement program.  *See, e.g., Mobil Oil Corp. v. U.S. Environmental Protection Agency*, 35 F.3d 579, 581-82 (D.C. Cir. 1994) (noting that Congress statutorily amended the EPA's own sunset provision for certain regulations, directing that "such regulations shall not be terminated or withdrawn until revisions are promulgated and become effective . . . .").  With respect to the Limits, however, Congress did not make the sunset provisions conditional, nor did it grant the Secretary authority to extend them.  Instead, Congress clearly, plainly, and unconditionally stated that the Limits would apply only to services furnished before January 1, 1999.

since the inception of the Medicare program in 1965, the underlying basis of Medicare reimbursement for all hospital services has been the reasonable costs incurred by providers in furnishing those services. *See* Senate Report 404, *reprinted in* 1965 U.S.C.C.A.N. 1943, 1976 ("The bill provides that the payment to hospitals and other providers of services shall be equal to the reasonable cost of the services . . . ."); *see also* 42 C.F.R. § 413.1(b) ("Medicare is generally required . . . under section 1833(a)(2) of the Act (for services covered under Part B) to pay for services furnished by providers on the basis of reasonable costs as defined in section 1861(v) of the Act, or the provider's customary charges for those services, if lower.").

The Medicare statute's definition of "reasonable costs" mandates, and has always mandated, that the Secretary's methods for determining reasonable costs must ensure that the costs of services furnished to Medicare beneficiaries are not shifted to other patients (and *vice versa*). *See* § 1861(v)(1)(A) of the Act, 42 U.S.C. § 1395x(v)(1)(A); *see also* Senate Report 404, *reprinted in* 1965 U.S.C.C.A.N. 1943, 1976 ("[U]nder any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program."). In other words, the statutory "prohibition against cross-subsidization" is intended to ensure that the Medicare program pays its fair share – *i.e.*, reasonable costs, at least – for hospital services furnished to Medicare beneficiaries.[4]  This principle is recognized in the Secretary's long-standing regulations, stating the intent of the program to provide "fair and equitable reimbursement for services rendered [to] beneficiaries of the program." 42 C.F.R. § 413.5(a).

---

[4]    Courts have consistently enforced the prohibition against cross-subsidization to strike down Medicare payment policies that impermissibly deny payment to providers for their reasonable costs, absent an express statutory provision authorizing the Secretary to reimburse hospitals some amount less than the reasonable costs. *See, e.g.*, *St. Mary of Nazareth Hosp. Ctr.*, 760 F.2d at 1315-17; HCFA Ruling 87-3, *reprinted in* 52 Fed. Reg. 13873, 13873 (Apr. 27, 1987) (acquiescing in decisions of the Sixth, Eighth, Ninth, and D.C. Circuit Courts of Appeal invalidating a Medicare payment rule that violated the statutory proscription against cross-subsidization).

As shown above, there was no express statutory basis for reimbursement of covered outpatient services on a basis other than reasonable costs effective during the period from January 1, 1999 to August 1, 2000. And, in particular, the Limits were terminated effective January 1, 1999. Thus, consistent with Congress' express determination in 1999 to extend the reasonable cost reduction factors until such time as the Secretary implemented the Outpatient PPS, it is evident that Congress intended to reimburse hospitals for the reasonable costs they incurred, after application of the 5.8 and 10 percent reasonable cost reduction factors, in furnishing covered hospital outpatient services to Medicare patients during the period at issue.

### 5.2. The Secretary Cannot Meet His Burden of Showing that Application of the Blended Payment Rate Limitations to Services Furnished After January 1, 1999 Is the Minimum Statutory Alteration Necessary to Achieve Congressional Intent.

The Secretary undoubtedly will argue that his decision to apply the Limits to the periods at issue is entitled to *Chevron* deference and should be upheld as a reasonable interpretation of the Medicare Act. But, an agency that has interpreted a statute to achieve a result at odds with the statute does not enjoy the benefit of deference under *Chevron* step two, *Appalachian Power Co.,* 249 F.3d at 1043-44, and the Secretary cannot meet the burden he bears under binding circuit precedent to show that he has modified that statute's plain language no more than the minimum extent necessary to effect Congress' clear intent. *See Mova*, 140 F.3d at 1068.

The Secretary contends that section 1833 of the Act, as amended by BBA '97, can be construed literally to create a gap in Medicare payment for covered outpatient services after January 1, 1999. As discussed earlier, the BBA directed the Secretary to implement the Outpatient PPS in 1999 and terminated the Limits effective January 1, 1999. *See* BBA '97 §§ 4523(a), (d). Under the Secretary's interpretation, the BBA did not specify what should happen, however, if the Secretary failed to timely implement the prospective payment system as

– 20 –

directed.  *See* 65 Fed. Reg. at 18489-90.  The Secretary argues that it is therefore possible to read the statute so as to reach an absurd result, such that Congress provided for no payment methodology for hospital outpatient services that were furnished and always remained covered by the Medicare program after January 1, 1999.  *See id*.  Under this interpretation, between January 1, 1999 (when the Limits terminated) and August 1, 2000 (when the Outpatient PPS became effective), there would be no statutorily authorized reimbursement methodology for hospital outpatient services.  *See id*. at 18490.

There is no dispute, however, that such a construction of the statue would be inconsistent with Congress' intent.  Even the Secretary agrees that Congress could not have intended that outpatient services be covered under the Medicare Program, that Medicare be obligated to pay its fair share of the costs of those services, and yet there be no basis for reimbursement to the providers of those services.  In the April 7, 2000 final rule with comment period regarding the implementation of the Outpatient PPS, the Secretary noted that:

> While it is therefore possible to read the statute in such a way that an outpatient service furnished after January 1, 1999 but not yet designated as a covered outpatient service by HCFA for purposes of PPS would have no payment methodology applicable to it, we do not believe that Congress intended such a result.

65 Fed. Reg. at 18489-90.

In the preamble to April 7, 2000 rule, the Secretary asserted that his application of the Limits to services furnished on or after January 1, 1999 is reasonable because the Secretary believes this is what Congress would have done if Congress had known that the Secretary would fail to timely implement the Outpatient PPS.  *See id.*  This argument is invalid, however, for at least two reasons.  First, it stands on a false premise; Congress *did* know that the Secretary would not meet the statutory implementation date, and with notice that the Secretary was not going to implement the PPS timely, Congress revisited the BBA in 1999 and chose not to extend the

Limits beyond January 1, 1999. Congress did so even as it enacted further amendments in the BBRA that did extend the 5.8 and 10 percent reasonable cost reduction factors.

Second, the Secretary's thoughts about what he thinks Congress would have intended – what the Court of Appeals previously described as "penumbral congressional purpose" – cannot override the plain statutory language of the BBA that terminated the limits effective January 1, 1999. *See Natural Resources Defense Council v. Thomas* ("*NRDC II* "), 805 F.2d 410, 436 (D.C. Cir. 1986). Even assuming *arguendo* that a literal construction of the Medicare Act, as amended, would lead to an absurd result, the Secretary does not thereby gain free license to rewrite the statute into his desired image. As explained by the Court of Appeals, this is not a *Chevron* step two situation, in which the statute is silent or ambiguous, and where any reasonable interpretation advanced by the agency is given deference by the courts. *See Appalachian Power Co.*, 249 F.3d at 1043-44 (holding that an agency asserting the authority to interpret a statute to avoid a result at odds with Congressional intent does not receive the benefit of *Chevron* step two deference). Here, the statute is neither silent nor ambiguous. Where a literal reading of the statute leads to an absurd result that "based on logic and statutory structure," *Engine Mfrs.,* 88 F.3d at 1089, Congress could almost certainly not have meant (as the Secretary has recognized), the agency's interpretation "may deviate no further from the statute than is needed to protect congressional intent." *Mova*, 140 F.3d at 1068.

In *Mova*, the Secretary concluded, as here, that a literal construction of a statute would lead to an absurd result in that the statutory approval process enacted by Congress to encourage the development and marketing of generic versions of prescription drugs could, if interpreted literally, actually block such development and marketing. *Id.* at 1064-65. In order to avoid this absurd result, which Congress could not have meant, and to achieve the statutory purpose, the

Secretary imposed additional requirements to the statutorily authorized approval process. *Id.* at 1067-68.

The Court of Appeals, however, struck down the Secretary's action. The Court agreed that the additional requirement imposed by the Secretary achieved his purposes, but also found that the Secretary's action in that case, as here, was "gravely inconsistent" with the statutory text and structure. *Id.* at 1069. The Court also found that the Secretary was unable to show that his statutory rewrite was necessary in order to avoid "a result demonstrably at odds" with the statute's drafters. *Id.* The Court concluded that the Secretary could have adopted a narrower solution to the potential problems caused by literal interpretation of the statutory amendments, but instead chose to implement a broad new rule without statutory authorization. The Court noted: "In effect, the [Secretary] has embarked upon an adventurous transplant operation in response to blemishes in the statute that could have been alleviated with more modest corrective surgery." *Id.*

In this case, as in *Mova*, the Secretary has gone farther than necessary from the statute's plain language in order to avoid what the Secretary considers to be an absurd result. And so here, as in *Mova*, the Secretary cannot meet his burden to show that he has added no more to the statute than the minimum necessary to effect Congress' clear intent.

Here, the minimum deviation necessary to protect congressional intent, as required under *Mova*, is to reimburse the hospitals for the reasonable costs of services furnished during the period at issue, after application of the reasonable cost reduction factors that Congress extended until such time as the Secretary implemented the Outpatient PPS effective August 1, 2000. There is no dispute that Congress surely intended that the Medicare program should reimburse hospitals for outpatient services that were furnished and always remained covered by the

Medicare program during the period at issue. And we know that Congress expressly extended the 5.8 and 10 percent cost reduction factors to remain in effect, in the statutory definition of "reasonable cost," throughout the duration of the period at issue. Reimbursement on a reasonable cost basis, therefore, is not only consistent with those amendments but also with the long-standing statutory prohibition against cross-subsidization and the Medicare program's obligation to provide "fair and equitable reimbursement." *See* § 1861(v)(1)(A) of the Act, codified at 42 U.S.C. § 1395x(v)(1)(A); *see also* 42 C.F.R. §§ 413.5(a), 413.9(b)(1).

Thus, in view of the facts that Congress twice extended the 5.8 percent and 10 percent reductions to remain in effect until implementation of the Outpatient PPS, and Congress also elected not to extend the Limits, it follows that the minimum deviation necessary to protect Congress' intent is to provide for reimbursement of hospitals' reasonable costs, net of the reduction factors for operating and capital-related costs of hospital outpatient services. These reduction factors related only to services furnished by hospitals and only to hospital services furnished to outpatients. They do not apply to any other services, nor do they relate to services paid under the Outpatient PPS. If these reductions are not relevant to the services at issue, then they have no relevance at all, and Congress' actions in twice extending their sunset date were futile and meaningless.

But, it is a cardinal principle of statutory interpretation that we should not presume that Congressional action is superfluous or meaningless. Courts are obligated to "read the statutes to give effect to each if [they] can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267 (1981); *see also Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997).

Finally, we can safely assume, of course, that Congress intended the sunset provisions for the Limits to have some effect. As the Court of Appeals recently held, "courts presume that

Congress has used its scarce legislative time to enact statutes that have some legal consequence." *Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872, 877 (D.C. Cir. 2006).

Keeping these conclusions in mind, then, the Secretary's action in applying the Limits to the outpatient services furnished by hospitals in 1999 and 2000 cannot be viewed as the minimum necessary to give effect to Congressional purpose and intent. Here, the Secretary has done more than merely add a new administrative layer to the existing statutory program, such as the action the court struck down in *Mova*. There is no evidence in the statutory language, context or history that shows a congressional purpose beyond ensuring that the Medicare program paid for its fair share of the outpatient services furnished in the period between termination of the blended payment rates and implementation of the Outpatient PPS.

In applying the Limits to the period at issue, beyond their statutory termination, the Secretary has gone far beyond what was necessary to implement Congress' clear intent, and instead has imposed what he believes to be the most rational choice, based on what he assumes Congress would have wanted. But the Secretary cannot simply invoke his own perception of legislative intent to justify his application of the Limits, particularly when the plain language of the statute has made the Limits inapplicable to the periods at issue. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 460-62 (2002) (concluding that the Commissioner of Social Security improperly relied upon her view of a statute's "overarching legislative purpose" to reach a result at odds with the plain language of the statute); *see also Engine Mfrs.*, 88 F.3d at 1088-89 (finding that despite the illogical wording of a statute, the fact that the statute lends itself to a plain meaning results in the requirement to uphold the statute as written). Even when a literal application of the statutory language might lead to an illogical result, the Secretary is bound by the plain language of the statute, and may alter it only to the minimum extent necessary to

achieve Congress' purpose, not his own. *See Mova*, 140 F.3d at 1068; *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) (holding that it is "beyond [the court's] province to rescue Congress from its drafting errors, and to provide for what [it] might think. . . is the preferred result"); *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004) ("The suggestion that Congress may have 'dropped a stitch,' . . . is not enough to permit us to ignore the statutory text."). Therefore, the Court should invalidate the Secretary's action, and enter an order directing the Secretary to reimburse the Plaintiff Hospitals for the reasonable cost of all covered hospital outpatient services furnished to Medicare patients between January 1, 1999 and August 1, 2000.

### 5.3.    The Secretary's Action Is Arbitrary and Capricious Due to the Secretary's Failure to Provide a Reasoned Explanation for Treating Similar Situations Differently.

A long line of Circuit precedent has established the principle that an agency action is arbitrary and capricious when the agency has "offered insufficient reasons for treating similar situations differently." *Transactive Corp.*, 91 F.3d at 237; *see also Airmark Corp. v. FAA*, 758 F.2d 685, 691 (D.C. Cir. 1985) ("Deference to agency authority or expertise, however, 'is not a license to . . . treat like cases differently'") (quoting *United States v. Diapulse Corp.*, 748 F.2d 56, 62 (2nd Cir. 1984)). More recently, the Court of Appeals has held that "[w]here an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington Northern & Santa Fe Ry. Co. v. Surface Trans. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005).

Here, the Secretary, instead of reimbursing the Plaintiff Hospitals for ambulatory surgery, radiology, and diagnostic outpatient services on the basis of the reasonable costs of those services, has chosen to apply the Limits to those services. The Secretary apparently has

concluded that it would be appropriate to do so because the ambulatory surgery, radiology, and diagnostic services at issue here were not designated for payment under the Outpatient PPS. *See* 65 Fed. Reg. at 18489-90. The Secretary has failed, however, to offer a reasoned explanation distinguishing these services from other outpatient services which were also not designated for payment under the Outpatient PPS, and yet were and still are reimbursed on a reasonable cost basis.

For example, the services of residents who are not in an approved graduate medical education (GME) program are reimbursed under Medicare Part B on a reasonable cost basis. *See* 42 C.F.R. § 415.202. This is true for services rendered both to inpatients and to outpatients by the residents. *See id.* Similarly, a teaching hospital may elect to receive payment on a reasonable cost basis for the direct medical and surgical services of its physicians, rather than receiving fee schedule payments for these services. *See* 42 C.F.R. § 415.160; *see also* 42 C.F.R. § 419.2(c)(4) (excluding from payment under the Outpatient PPS the costs of teaching physicians attributable to Part B services for hospitals that elect cost-based reimbursement).

Like the ambulatory surgery, radiology and diagnostic services at issue in this case, the resident services reimbursed under section 415.202 and the teaching physician services reimbursed under section 415.160 are outpatient services that are not reimbursed under the Outpatient PPS. For the 1999 and 2000 cost years at issue in this case, however, the Secretary reimbursed hospitals for these resident and teaching physician services on the basis of the reasonable costs incurred by the hospitals in providing the services. The Secretary continues to reimburse for these services on the basis of reasonable costs to this day. Yet the Secretary refused to reimburse for ambulatory surgical, radiology, and diagnostic services, which similarly

were not designated for reimbursement under the Outpatient PPS during the period at issue, on the basis of reasonable costs.

Having failed to treat these substantially similar situations in a similar manner, the Secretary has further compounded his failure by also failing to provide any explanation at all for his inconsistent treatment of these similar costs. Lacking such a explanation, let alone a reasoned one, the Secretary's action in refusing to reimburse the Plaintiff Hospitals for their reasonable costs incurred in furnishing outpatient services in 1999 and 2000 is arbitrary and capricious, and should be set aside in accordance with section 706 of the APA.

### 5.4.   The Secretary May Not Retroactively Apply the Blended Payment Rate Limitation to the 1999 and 2000 Cost Reporting Periods.

As discussed earlier, the Secretary did not announce his determination to apply the Limits to outpatient services furnished after January 1, 1999 until publication of the final Outpatient PPS rule on April 7, 2000. To the extent that determination applied to services furnished prior to April 7, 2000, it constitutes an impermissible retroactive rule and should be set aside because it is contrary to law.

The general rule on retroactive application of administrative regulations, as set forth by the Supreme Court, is simple: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208. In *Bowen*, the Court also held that "[b]y the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress *in express terms*." *Id.* (emphasis added). Subsequently, in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), the Court reaffirmed the holding of *Bowen* that

– 28 –

retroactive application of administrative rules or statutes is not permitted absent clear indication from Congress that retroactivity was authorized. *Id.* at 266.

In *Bowen*, as here, the Secretary was attempting to revive a limitation on reasonable cost reimbursement which had been terminated, and to then apply the limitation retroactively. On June 30, 1981, the Secretary issued a new rule for calculating reasonable costs that included a new method for calculating the hospital wage index, a factor used then and now to reflect nationwide variations in salary levels for hospital employees. *Bowen*, 488 U.S. at 206-07. This Court struck down that cost-limit rule, concluding that the Secretary had promulgated the rule without following the required APA procedures for public notice and comment. *Id.* at 207. The Secretary did not appeal the Court's invalidation of the rule, but instead recognized the invalidity of the rule and settled the plaintiff hospitals' cost reports without application of the cost-limit rule. *Id.*

In 1984, however, the Secretary instituted a notice-and-comment rulemaking to adopt the same cost-limit rule that the Court had struck down, and to apply that rule retroactively to July 1, 1981. The Secretary argued that he had the statutory authority to retroactively apply the new rule, and that in the alternative, retroactive application was necessary in order to fulfill Congressional intent. *See id.* at 207, 215.

The Supreme Court disagreed, concluding that "the Secretary's general rulemaking power contain[s] no express authorization of retroactive rulemaking." *Id.* at 213. The Court went on to note that investigation of Congressional intent also indicated that no such authority was contemplated. *Id.* To the contrary, the Court found that the House and Senate Committee reports reflected the Congressional intent to *forbid* retroactive application of rules limiting reasonable cost reimbursement. *See id.* at 214 ("The proposed new authority to set limits on

– 29 –

costs . . . would be exercised on a prospective, rather than retrospective, basis so that the provider would know in advance the limits to Government recognition of incurred costs and have the opportunity to act to avoid having costs that are not reimburseable.") (*quoting* H.R. Rep. No. 92-231 (1971), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5070).  Finally, the Court noted that the "absence of any express authorization for retroactive cost-limit rules weighs heavily against the Secretary's position."  *Id.*

Here, the Secretary's April 7, 2000 determination to retroactively apply the Limits to the prior period at issue exactly parallels the retroactive rulemaking that the Court struck down in *Bowen*.  Then, as here, the Secretary revived a terminated cost reimbursement limit and applied it retroactively.  Then, as here, Congress did not grant the Secretary the authority to retroactively apply the limits.  Finally, then, as here, the Secretary claimed that in the absence of statutory authorization, his action was nonetheless necessary to achieve Congressional purpose. Following the Supreme Court's well-reasoned – and controlling – analysis in *Bowen*, this Court should also strike down the Secretary's April 7, 2000 determination to retroactively apply the Limits to services furnished after their January 1, 1999 termination.  The Secretary's determination is "contrary to law" in this respect and should be set aside in accordance with section 706 of the APA.

## VI.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court grant their

consolidated motion for summary judgment.

_____/s/_____
Christopher L. Keough (lead)
   DC Bar No. 436567
Dennis M. Barry
   DC Bar No. 375152
Robert E. Waters
   DC Bar No. 976412
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 626-5451 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiffs in
Case No. 07-1889


_____/s/_____
Christopher L. Crosswhite
   D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL 33131
(305) 960-2218

Co-Counsel for Plaintiffs in
Case No. 07-1889 and
Counsel for Plaintiffs in
Case Nos. 07-2197 and
07-2329

Date:  June 2, 2008

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
CARITAS MEDICAL CENTER, et al.,    )
     )
     )
    Plaintiffs,    )
    v.    )    **Case No. 07-1889 (RMU)**
     )
MICHAEL O. LEAVITT, Secretary,    )
U.S. DEPARTMENT OF HEALTH AND )
    HUMAN SERVICES,    )
     )
    Defendant.    )
_____ )
     )
BAPTIST MEMORIAL HOSPITAL –    )
MISSISSIPPI COUNTY, INC., et al.,    )
     )
    Plaintiffs,    )
    v.    )    **Case No. 07-2197 (RMU)**
     )
MICHAEL O. LEAVITT, Secretary,    )
U.S. DEPARTMENT OF HEALTH AND )
    HUMAN SERVICES,    )
     )
    Defendant.    )
_____ )
     )
CHIPPEWA VALLEY HOSPITAL &    )
OAKVIEW CARE CENTER, INC.,    )
et al.,    )
     )
     )
    Plaintiffs,    )
    v.    )    **Case No. 07-2329 (RMU)**
     )
MICHAEL O. LEAVITT, Secretary,    )
U.S. DEPARTMENT OF HEALTH AND )
    HUMAN SERVICES,    )
     )
    Defendant.    )
_____ )

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS
## NOT IN GENUINE DISPUTE

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), the Plaintiffs submit the following statement of material facts as to which there is no genuine issue.

Plaintiffs state:

## I.    THE PARTIES

1.    The Plaintiffs in these three consolidated actions are a group of 166 hospitals.  Amended Complaint, *Caritas Medical Center, et al. v. Leavitt*, No. 07-1889 (RMU) (D.D.C. Nov. 28, 2007) ("Caritas Comp.") and Answer ¶¶ 7-20; Complaint, *Baptist Memorial Hosp. – Mississippi County, Inc., et al. v. Leavitt*, No. 07-2197 (RMU) (D.D.C. Dec. 6, 2007) ("Baptist Memorial Comp.") and Answer ¶¶ 7-24; Complaint, *Chippewa Valley Hospital & Oakview Care Center, Inc., et al. v. Leavitt*, No. 07-2329 (RMU) (D.D.C. Dec. 28, 2007) ("Chippewa Valley Comp.") and Answer ¶¶ 7-11.

2.    The Defendant in these three consolidated actions is Michael O. Leavitt, the Secretary of the United States Department of Health and Human Services, which is the federal agency which administers the Medicare program.  Caritas Comp. and Answer ¶ 21, Baptist Memorial Comp. and Answer ¶ 25, Chippewa Valley Comp. and Answer ¶ 12.

3.    During the period at issue, beginning January 1, 1999 and ending July 31, 2000, each of the Plaintiff Hospitals participated in the Medicare program as a provider of hospital services.  *See* Caritas Comp. and Answer ¶ 65; Baptist Memorial Comp. and Answer ¶ 69; Chippewa Valley Comp. and Answer ¶ 56.

## II.    THE NATURE OF THE DISPUTE

4.    The nature of the dispute concerns Defendant's application of certain blended payment rate limits ("the Limits") on Medicare reimbursement for covered outpatient services furnished by the Plaintiff Hospitals during the period from January 1, 1999 through July 31, 2000.  *See* 65 Fed. Reg. 18434, 18490 (Apr. 7, 2000).

5.    Each of the Plaintiff Hospitals submitted one or more Medicare cost reports, encompassing a portion of the period beginning January 1, 1999 through August 1, 2000, for a determination by the Secretary's fiscal intermediary of the amount of reimbursement owed the hospital by the Medicare program for hospital outpatient services to Medicare beneficiaries.  *See* Caritas Comp. and Answer ¶¶ 67-68; Baptist Memorial Comp. and Answer ¶¶ 71-72; Chippewa Valley Comp. and Answer ¶¶ 58-59.

6.    For each of these cost reports, the fiscal intermediary issued a Notice of Program Reimbursement ("NPR").  *See* Caritas Comp. and Answer ¶ 69; Baptist Memorial Comp. and Answer ¶ 73; Chippewa Valley Comp. and Answer ¶ 60.  In issuing those payment determinations in the NPRs, the intermediaries were required to apply the Limits to the costs of ambulatory surgical, radiology, and diagnostic services furnished on or after January 1, 1999 and before August 1, 2000.  *See* 65 Fed. Reg. at 18490.

7.    As a result of the application of the Limits, the Plaintiff Hospitals received reimbursement for cost reporting periods at issue in amounts less than the reasonable costs actually incurred by the hospitals in providing hospital outpatient services to Medicare beneficiaries.  *See* Caritas Comp. and Answer ¶ 70; Baptist Memorial Comp. and Answer ¶ 74; Chippewa Valley Comp. and Answer ¶ 61; *see also* 65 Fed. Reg. at 18490.

### III.    THE ADMINISTRATIVE APPEALS AND THE ACTIONS BEFORE THE COURT

8.    After the fiscal intermediaries issued NPRs for the cost reporting periods at issue, the Plaintiff Hospitals timely appealed such determinations to the Provider Reimbursement Review Board ("PRRB").  *See* Caritas Comp. and Answer ¶ 71; Baptist Memorial Comp. and Answer ¶ 75; Chippewa Valley Comp. and Answer ¶ 62.

9.    In each of the administrative appeals, the PRRB granted the hospitals' request for expedited judicial review of the Secretary's application of the Limits to determine reimbursement for the periods at issue.  *See* Caritas Comp. and Answer ¶ 72; Baptist Memorial Comp. and Answer ¶ 76; Chippewa Valley Comp. and Answer ¶ 63.

10.    The Plaintiff Hospitals subsequently filed three separate actions for judicial review by this Court pursuant to the PRRB's decisions granting expedited judicial review in the administrative appeals.

11.    On January 31, 2008, the Parties jointly moved this Court to consolidate all three cases for purposes of joint briefing on motions for summary judgment.  On February 11, 2008, the Court granted the joint motion in *Caritas Medical Center, et al. v. Leavitt*, No. 07-1889 ("*Caritas*"), the earliest-numbered of the three actions.  The Court's Calendar and Case Management Committee subsequently reassigned the other two actions, *Baptist Memorial Hosp. - Mississippi County, Inc., et al. v. Leavitt*, No. 07-2197 and *Chippewa Valley Hospital & Oakview Care Center, Inc., et al. v. Leavitt*, No. 07-2329, to the judge in *Caritas*, for consolidated briefing and hearing on motions for summary judgment.

Respectfully Submitted,

_____/s/_____
Christopher L. Keough (lead)
  DC Bar No. 436567
Dennis M. Barry
  DC Bar No. 375152
Robert E. Waters
  DC Bar No. 976412
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 626-5451 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiffs in
Case No. 07-1889


_____/s/_____
Christopher L. Crosswhite
  D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W.
Suite 1000
Washington, D.C. 20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL 33131
(305) 960-2218

Co-Counsel for Plaintiffs in
Case No. 07-1889 and
Counsel for Plaintiffs in
Case Nos. 07-2197 and
07-2329

Dated: June 2, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CARITAS MEDICAL CENTER, et al.,

          Plaintiffs,

    v.                              Case No. 07-1889 (RMU)

MICHAEL O. LEAVITT, Secretary,
U.S. DEPARTMENT OF HEALTH AND
  HUMAN SERVICES,

          Defendant.
_____

BAPTIST MEMORIAL HOSPITAL –
MISSISSIPPI COUNTY, INC., et al.,

          Plaintiffs,

    v.                              Case No. 07-2197 (RMU)

MICHAEL O. LEAVITT, Secretary,
U.S. DEPARTMENT OF HEALTH AND
  HUMAN SERVICES,

          Defendant.
_____

CHIPPEWA VALLEY HOSPITAL &
OAKVIEW CARE CENTER, INC.,
et al.,

          Plaintiffs,

    v.                              Case No. 07-2329 (RMU)

MICHAEL O. LEAVITT, Secretary,
U.S. DEPARTMENT OF HEALTH AND
  HUMAN SERVICES,

          Defendant.
_____

## PROPOSED ORDER

Upon consideration of the parties' cross-motions for summary judgment and the memoranda in support of the motions, it is hereby:

ORDERED that plaintiffs' motion be, and hereby is, GRANTED; and it is

FURTHER ORDERED that defendant Leavitt's motion be, and hereby is, DENIED; and it is

FURTHER ORDERED that defendant Leavitt's application of the blended payment rate limits ("the Limits") to determine the amount of Medicare reimbursement due plaintiffs for covered hospital outpatient services furnished to Medicare beneficiaries during the period from January 1, 1999 through July 31, 2000 be, and hereby is, declared invalid; and it is

FURTHER ORDERED that defendant Leavitt is directed to reimburse plaintiffs, within 60 days of the date of this Order, the additional sums due them for the reasonable costs of hospital outpatient services furnished to Medicare beneficiaries during the periods at issue, as determined under Medicare's reasonable cost reimbursement principles and without application of the Limits, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2).

SO ORDERED, this the _____ day of _____, 2008.


_____
The Honorable Ricardo M. Urbina
United States District Judge